UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEVIN C.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. 2:24-CV-992-DWC

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of his applications for Supplemental Security Income (SSI) benefits and Disability Insurance Benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13, the parties have consented to proceed before the undersigned. After considering the record, the Court finds no reversable error and affirms the Commissioner's decision to deny benefits.

**I.    BACKGROUND**

Plaintiff filed applications for SSI and DIB on September 18, 2020. Administrative Record (AR) 17. His alleged date of disability onset is January 1, 2020. *Id.* His requested hearing was held before an Administrative Law Judge (ALJ) on October 13, 2023. AR 40–98. On

1  November 21, 2023, the ALJ issued a written decision finding Plaintiff not disabled. AR 14–39.
2  The Appeals Council declined Plaintiff's timely request for review, making the ALJ's decision
3  the final agency action subject to judicial review. AR 1–6. On July 11, 2024, Plaintiff filed a
4  Complaint in this Court seeking judicial review of the ALJ's decision. Dkt. 5.

## II.   STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if, and only if, the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## III.   DISCUSSION

In his opening brief, Plaintiff argues the ALJ erred by failing to order additional testing related to Plaintiff's alleged intelligence disorder and failing to properly assess the medical opinion of Elwyn Hulse Jr., PsyD. *See generally* Dkt. 10.

**A.   Plaintiff's Intelligence Disorder**

At step two of the sequential evaluation process, the ALJ determines whether a claimant has produced evidence of one or more medically determinable impairments (MDIs) and whether those impairments are severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii). At step two, the ALJ found Plaintiff did not have a medically determinable impairment of an intellectual disorder. *See id.*

Plaintiff does not challenge the ALJ's determination that Plaintiff's intelligence disorder was not an MDI. *See* Dkt. 10. As the ALJ noted, the only mention of such a disorder is in Dr. Hulse's opinion, which listed "intellectual disability disorder" as a diagnosis. *See* AR 20, 732. Without anything further, the ALJ properly found there was no MDI. *See* 20 C.F.R. § 404.1521 ("[A] physical or mental impairment must be established by objective medical evidence from an

acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).").

Rather, Plaintiff argues the ALJ fell short of his duty to develop the record by not ordering a consultative examination administering an IQ test to Plaintiff. Dkt. 10 at 3–5. Defendant argues (1) this duty was not triggered; (2) the ALJ was not required to order an IQ test; and (3) Plaintiff waived the argument by failing to raise it at the agency level. Dkt. 14 at 2–4. The Court agrees as to the first argument and need not consider the second or third arguments.

The ALJ "has an independent duty to fully and fairly develop the record," *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (cleaned up), which "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)). This duty is heightened when a claimant is unrepresented or mentally ill. *Tonapetyan*, 242 F.3d at 1150.

The Ninth Circuit has found the duty triggered where the ALJ was informed by an unrepresented claimant additional probative evidence existed, *see McLeod v. Astrue*, 640 F.3d 881, 885–86 (9th Cir. 2011), where an unrepresented claimant's statements and the record suggested an additional impairment, *see Celaya v. Halter*, 332 F.3d 1177, 1182–83 (9th Cir. 2003), where an expert relied upon by the ALJ indicated the evidence was inadequate to form an opinion, *see Tonapetyan*, 242 F.3d at 1150–51, and where an ALJ relied upon the omission of testimony not elicited, *see Widmark v. Barnhart*, 454 F.3d 1063, 1068–69 (9th Cir. 2006).

However, the duty cannot shift the burden of proving disability onto the ALJ. *See Mayes*, 276 F.3d at 460. For this reason, the lack of adequate evidence of an MDI generally does not trigger the duty. Rather, it is the claimant's duty to produce such evidence. *See* 42 U.S.C. §

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 3

423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. §§ 404.1512(a)(1) ("In general, you have to prove to us that you are blind or disabled."), 404.1512(a)(2)(i) ("The evidence in your case record . . . must allow us to determine . . . the nature and severity of your impairment(s).").

The Ninth Circuit's decision in *Mayes* confirms inadequate evidence of an MDI does not compel further record development. There, a claimant alleged disability because of back pain. *See Mayes*, 276 F.3d at 458. She argued the ALJ was required to order an exam testing whether she had herniated discs. *See id.* at 459. The Ninth Circuit rejected the argument. *Id.* "The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence"—rather, it was adequate for the ALJ to conclude there was insufficient evidence of an MDI. *Id.* at 460. To find otherwise, the Court said, "would improperly shift [the claimant's] burden to the ALJ." *Id.* at 459.[1]

The principle is also confirmed by Commissioner's regulations. When medical evidence is not "based on" the "medically acceptable clinical or laboratory diagnostic techniques" that are required to establish an MDI (*see* 20 C.F.R. § 404.1521), the evidence is considered "inconsistent," rather than "insufficient." 20 C.F.R. § 404.1520b(b). When the evidence is inconsistent, the ALJ need only take further action if he "cannot reach a conclusion about

---

[1] *See also Jamtaas v. Colvin*, 606 F. App'x 363 (9th Cir. 2015) (unpublished) ("Jamtaas did not testify at his administrative hearing to symptoms of PTSD, and no other doctor diagnosed him with PTSD. Thus, the ALJ's duty to develop the record was not triggered."). The Ninth Circuit did require an ALJ to develop the record with respect to the existence of an MDI in *Celaya*, 332 F.3d at 1182–83, but that case involved the MDI of obesity, which is established with "trivial arithmetic calculations" from height and weight statistics already in the record. *Id.* at 1182–83, 1183 n.3. It was the claimant's appearance and those statistics of record which invoked the duty, not the absence of valid objective medical evidence. *See id.* And that case involved an unrepresented claimant, heightening the ALJ's duty; the same outcome may not result if the claimant is represented. *See Burch v. Barnhart*, 400 F.3d 676, 681–82 (9th Cir. 2005) (distinguishing *Celaya* because "Burch was represented by counsel").

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 4

whether [the claimant] is disabled." *See id.* § 404.1520b(b)(1)–(2). If the lack of objective medical evidence establishing an MDI always required further action, this distinction would be superfluous. To require further action not required by Commissioner's regulations would exceed the Court's authority. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978) ("[R]eviewing courts are generally not free to impose [additional procedural requirements] if the agencies have not chosen to grant them."); *see also id.* at 541–48.

Relying on *Garcia v. Commissioner of Social Security*, 768 F.3d 925 (9th Cir. 2014), Plaintiff suggests an ALJ must order IQ testing whenever it might be "relevant." *See* Dkt. 10 at 4–5. In *Garcia*, a consultative examiner administered a partial IQ test due to time constraints, revealing borderline results. *See* 768 F.3d at 927–28, 930. The ALJ found an MDI of borderline intellectual functioning, but—relying upon the partial results—found the claimant not disabled. *Id.* at 930–31. The Ninth Circuit found this was erroneous:

> [i]n a case, such as this one, that turns on whether a claimant has an intellectual disability and in which IQ scores are relied upon for the purpose of assessing that disability, there is no question that a 'fully and fairly develop[ed]' record […] will include a complete set of IQ scores […].

768 F.3d at 930–31 (cleaned up). *Garcia* thus requires an ALJ develop the record before relying upon partial IQ scores. *Id.*

Here, unlike in *Garcia*, the ALJ relied upon the *absence* of IQ scores in the record to find no MDI was established. *Garcia* cannot reach this situation—if it did, it would shift the burden of producing evidence of an MDI to the ALJ and would thus be inconsistent with *Mayes*. *See Kelava v. Gonzales*, 434 F.3d 1120, 1126 (9th Cir. 2006) ("A three-judge panel cannot disregard prior circuit precedent unless it has been effectively overruled by an intervening Supreme Court decision.") (citation omitted).

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 5

Indeed, much of the *Garcia* Court's reasoning is inapplicable to the situation where no IQ scores were ordered or obtained. The *Garcia* Court reached its decision, in part, because "the regulations promulgated by the SSA demonstrate that . . . it is essential for complete—rather than partial—sets of IQ scores to be used." 768 F.3d at 931. The partial IQ tests rendered the consultative examination incomplete, and therefore contrary to Commissioner's regulations. *Id.* ("[R]eports of test results 'must conform to accepted professional standards and practices in the medical field for a complete and competent examination,' 20 C.F.R. § 416.919n(b), and an examination is not complete unless it includes "all the elements of a standard examination in the applicable medical specialty," *id.* § 416.919n(c)."); *see also* 20 C.F.R. § 404.1519p(b) (Commissioner will recontact examiner "if the report is inadequate or incomplete").

Here, on the other hand, Dr. Hulse was retained to complete a mental status evaluation, not an assessment of Plaintiff's intellectual functioning. *See* AR 723. It is not the case, as it was in *Garcia*, that the examination was incomplete—rather, Dr. Hulse completed a full mental status examination and described her findings in a report. *See* AR 724–28. This is no small distinction. While certain requirements and obligations attach once an examination has been ordered (*see* 20 C.F.R. § 404.1519p), the decision to order a consultative examination in the first instance is itself discretionary.[2] The Court can enforce the obligations that attach once an exam is ordered, but to

---

[2] *See* 20 C.F.R. § 404.1519a(b) (enumerating "situations that *may require* a consultative examination") (emphasis added); *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) ("This does not mean that a claimant has an affirmative right to have a consultative examination performed by a chosen specialist."). In *Reed*, the Ninth Circuit found an ALJ was required to order a consultative examination because he found the evidence inadequate for evaluation and, under Commissioner's then-application regulations, that meant a consultative examination must be ordered. *See id.* at 841–43 (citing 20 C.F.R. § 404.1519a(b) (1991)). Commissioner has since modified its regulations to make such a decision discretionary. *Compare* 20 C.F.R. § 404.1519a(b) (1991) (amended 2012) (enumerating "situations *requiring* a consultative examination") (emphasis added) *with id.* § 404.1519a(b) (2012) ("may require"); *see also* How We Collect and Consider Evidence of Disability, 76 Fed. Reg. 20282-01 (2012 amendments to § 404.1519a "give [Commissioner's] adjudicators the discretion to determine the best way to address [inconsistencies and insufficiencies in evidence]"); *Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022) ("agency's updated regulations" may overturn prior Ninth Circuit precedent).

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 6

require a consultative examination in the first instance may exceed the scope of its authority. *See Vt. Yankee*, 435 U.S. at 524. For this reason, the Court declines to read *Garcia* to encompass the situation where no IQ testing was ordered in the first instance.

Plaintiff argues complete IQ scores were important for assessing whether he met Listing 12.05 (Intellectual Disorder) at step three.³ Dkt. 15 at 3–4. But IQ scores would not have altered the ALJ's step three finding. One of the two sets of criteria under which a claimant might show disability under Listing 12.05 requires IQ tests (*see* § 12.05(B)(1)), but that set also requires the claimant to have extreme or marked limitations in one or more "Paragraph B" areas of functioning (§ 12.05(B)(2)), which is also required to meet Listings 12.04 and 12.06. In considering whether Plaintiff met those listings, the ALJ found Plaintiff did not have extreme or marked limitations in the Paragraph B areas (*see* AR 21–22) and Plaintiff does not challenge this finding (*see* Dkt. 10).

In sum, the ALJ's duty to develop the record was not triggered by the absence of IQ scores.

**B.    Dr. Hulse's Medical Opinion**

Dr. Hulse completed an opinion in July 2022. *See* AR 724–33. She conducted a mental examination of Plaintiff, finding abnormal stream of mental activity, abnormal orientation, poor memory, and impaired concentration, abstract thinking, insight, and judgment. *See* AR 728–30. She opined Plaintiff would "struggle" in his abilities to learn new tasks, perform routine tasks, make simple decisions, communicate effectively, work effectively, perform work activities within a schedule, maintain appropriate behavior, and understand, remember, and persist in tasks. AR 731. She opined Plaintiff could not complete a normal workday or work week without

---

³ Citations to the Listings refer to 20 C.F.R. § Subp. P, app'x 1.

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 7

1 interruptions from psychologically based symptoms and could not adapt to changes in routine.

2 AR 731–32.

3   For applications, like Plaintiff's, filed after March 27, 2017, ALJs need not "defer or give

4 any specific evidentiary weight, including controlling weight, to" particular medical opinions,

5 including those of treating or examining sources. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

6 Rather, ALJs must consider every medical opinion in the record and evaluate each opinion's

7 persuasiveness, considering each opinion's "supportability" and "consistency," and, under some

8 circumstances, other factors. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. §§

9 404.1520c(b)–(c), 416.920c(b)–(c).

10   The ALJ found Dr. Hulse's opinion unpersuasive. *See* AR 29–30. With respect to

11 consistency, he found

12   Dr. Hulse's opinion is inconsistent with the other medical evidence. While the claimant's presentation during Dr. Hulse's exam showed significant mental status abnormalities in
13   nearly every area, the mental status exams provided by the claimant's treatment providers consistently showed no abnormalities and none of the claimant's treatment providers
14   noted the claimant had cognitive, memory or thought content abnormalities after his alleged onset date on exam [AR 521, 551, 570, 587, 596, 609, 617, 689, 701, 709, 715,
15   723–33, 799, 870, 974, 1028].

16 AR 29.

17   As the ALJ noted, Plaintiff's providers noted normal mental status findings throughout

18 the record, including finding he was oriented (AR 521, 587), alert (AR 570, 596, 609, 617, 689,

19 799, 870, 1028), had a normal affect (AR 521, 570, 596, 609, 617, 689, 709, 715, 870, 974,

20 1028), and had normal speech and content (AR 587, 617, 709). The only abnormal mental status

21 findings in the record are those contained in Dr. Hulse's examination. The ALJ's finding that Dr.

22 Hulse's opinion was contradicted by the medical record was therefore supported by substantial

23 evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("[The Court] must

24

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 8

consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]") (citations and quotation omitted).

Plaintiff contends this was not substantial evidence because the mental status examinations cited were "less extensive" than and not of the same "type and level of testing" as Dr. Hulse's mental status examination. *See* Dkt. 10 at 7. This potential deficit notwithstanding, the evidence pointed to by the ALJ is "such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion that he was not significantly limited in the areas Dr. Hulse opined he was limited in. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). Those areas related to his judgment, concentration, communication, and behavior, which could reasonably be measured by observations of his speech, content, orientation, and affect. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (There is "a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The ALJ also properly discounted the opinion because Dr. Hulse's opinion that Plaintiff would "struggle" in certain areas was vague as to the extent to which he would be unable to perform in those areas. *See* AR 29; *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (ALJ properly discounted opinion that described claimant's ability in areas as poor or fair because the ALJ "reasonably conclude[d] these characterizations were inadequate for determining RFC").

Arguing this finding was erroneous, Plaintiff points out that some forms used by Commissioner "have the same identified functional limitation[s]" as those opined on by Dr.

Hulse. Dkt. 15 at 4. However, the ALJ did not find the areas Dr. Hulse opined upon vague but, rather, found her opinion as to the extent Plaintiff was limited in those areas (that he "struggles" with them) vague (*see* AR 29). Commissioner's form asks sources to opine precise limitations (*e.g.*, none, mild, moderate) in those functional areas (*see* AR 149), so there is no contradiction between the ALJ's finding and Commissioner's policies.

Finally, the ALJ properly found Dr. Hulse's opinion that Plaintiff could not adapt to changes inconsistent with evidence he took public transit, an activity the ALJ reasonably assumed would involve at least some adaptation to changes in routine. *See* AR 30; *Ford*, 950 F.3d at 1155 ("A conflict between [an opinion] and a claimant's activity level is a specific and legitimate reason for rejecting the opinion.").

The ALJ provided adequate reasons supported by substantial evidence for discounting Dr. Hulse's opinion.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby **AFFIRMS** Defendant's decision denying benefits.

Dated this 31st day of December, 2024.

David W. Christel
United States Magistrate Judge